IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ROBERT M. BOYD, #B-51078,**     )
                                  )
      **Plaintiff,**              )
                                  )
vs.                               )     **CASE NO. 10-cv-701-MJR**
                                  )
**YOLANDA JOHNSON, MARVIN**       )
**POWERS, MS. VINARD, NURSE**     )
**RONDA, and STACY WILLIAMS,**    )
                                  )
      **Defendants.**             )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Robert M. Boyd, an inmate in Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 45 year sentence for attempt murder, in addition to sentences on several other offenses. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under Section 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Plaintiff suffers from severe seizures due to epilepsy, as well as from depression, dementia and an intellectual functioning disorder. His complaint consists of three counts: (1) Failure to provide adequate medical care to prevent his chronic grand mal seizures; (2) Deprivation of liberty by placing him in extended isolation; and (3) Violations of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, by failing to institute safety measures to prevent serious injury or death from his chronic grand mal seizures, failing to properly treat his disabling seizure disorder, and exacerbating his condition by placing him in isolation. He has sued each Defendant in his or her individual and official capacities.

Plaintiff seeks injunctive relief requiring the Defendants to provide him with testing and treatment for his seizure disorder, provide him with a cell with a working emergency call button and a sign to alert guards to his seizure condition, and remove the plexiglass covering on his cell door. He also seeks compensatory and punitive damages.

**Discussion**

Based on the allegations in the complaint, the Court finds it convenient to divide the pro se action into four (4) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Deliberate Indifference to Serious Medical Needs**

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference, even if the quality of care was substandard to the point of negligence or malpractice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). However, in certain instances, a constitutional claim may lie if prison officials' actions amount to a failure to treat a serious medical condition.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837. However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

The Seventh Circuit has found that an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective and fails to order further testing or refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer); *Kelley v. McGinnis*, 899 F.2d 612,

616-17 (7th Cir. 1990) (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of treatment knowing that it was ineffective" (citing *Estelle*, 429 U.S. at 104 n.10) and noting that "repeated, long-term negligent treatment" could amount to deliberate indifference); *but see Jolly v. Knudsen*, 205 F.3d 1094, 1097 (8th Cir. 2000) (doctor who changed dosage levels of anti-seizure medications and referred inmate to specialist was not deliberately indifferent).

Plaintiff alleges that he has suffered from severe epilepsy for the entire 16 years he has been in prison. Defendant Marvin Powers, M.D., has treated Plaintiff since he arrived at Tamms in 2003, in addition to a previous period from 1998 to 1999. Plaintiff has been on the anti-seizure medications Dilantin and Tegretol for an extended period, but this treatment has not alleviated his grand mal seizures, which Plaintiff claims have become worse since January 2010. He alleges that he suffered four severe seizures on January 14, 2010, another on February 24, 2010, and three others between March 31 and August 25, 2010. The seizures have caused loss of consciousness, cessation of breathing, vomiting, dizziness, nausea, pain, loss of bladder control, as well as head and other injuries from falling to the concrete floor. Plaintiff claims he had to be revived with CPR twice after his seizures on January 14, 2010.

Despite the worsening of Plaintiff's seizure condition, which has also been accompanied by unexplained severe weight loss (67 pounds), Defendant Powers has continued to treat Plaintiff with the same medications that have historically failed to ameliorate his symptoms. Furthermore, Plaintiff alleges that Defendant Powers has been unable to get these medications stabilized in Plaintiff's system.

Plaintiff complains at length about his treatment following a seizure on February 24,

2010. When he regained consciousness, he was lying on a mattress in the infirmary, soaked in his own urine, and was told by staff he had been in that condition for two hours. He claims Defendants Powers, Vinard (Health Care Administrator), Williams (Nursing Supervisor), and Nurse Ronda all failed to properly treat him for that seizure, doing nothing but a blood draw to check his medication levels.

Plaintiff also complains that the Defendants have failed to provide follow up treatment that was recommended by an outside physician who treated Plaintiff in a Marion hospital after Plaintiff suffered seizures on January 14, 2010, and diagnosed him with "post concussion syndrome." While Defendants did later take Plaintiff to a Carbondale hospital where he had an EEG, the recommended MRI could not be completed because of Plaintiff's weakened condition. Plaintiff states he never was fully tested and never was taken to a neurologist or other specialist, as recommended by the Marion doctor.

In addition to the seizure disorder, Plaintiff has complained on numerous occasions to Defendants Powers and Vinard of other physical and mental health symptoms including pain, dizziness, depression, delusions, suicidal thoughts and urges to harm himself. Nevertheless, Plaintiff received no treatment, allegedly because he could not be given other medications while he was on the Dilantin and Tegretol. The Seventh Circuit has declared that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983). *See also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175 (9th Cir. 2002).

While Plaintiff cannot dictate his treatment, and mere dissatisfaction with treatment does not state a claim, the length of time Plaintiff has continued to suffer from severe seizures without

relief, in addition to the significant side effects he describes and untreated serious mental health issues, suggests a lack of attention to Plaintiff's condition that prevents the Court from dismissing his claim at this stage. Therefore, Count 1 may proceed against Defendants Powers, Vinard, Williams, and Nurse Ronda.

However, Plaintiff does not state a claim against Defendant Johnson (Tamms warden) for deliberate indifference to his medical needs, as she had no direct role in the provision of medical care to Plaintiff, and there is no supervisory liability in a Section 1983 action. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to Section 1983 actions).

**Count 2 - Cruel and Unusual Punishment**

Plaintiff asserts that Defendants Powers, Vinard, Williams, and Nurse Ronda's actions on February 24, 2010, after he suffered a seizure, amounted to cruel and unusual punishment. Plaintff lost consciousness and was moved to the infirmary, where Defendants left him lying unconscious for two hours. During this time, Plaintiff urinated on himself and when he awoke, his clothes and the mattress under him were soaked with urine. Other infirmary staff then offered Plaintiff cleaning products and dry clothes for him to clean up.

Although Plaintiff was undoubtedly offended by finding himself in this condition, he did not suffer any lasting injury, and indeed was not conscious for the two hours he alleges he was left in this state. Thus, he has not stated a claim for deprivation of any constitutional rights. *See Decker v. Dunbar*, 633 F. Supp. 2d 317, 341-42 (E.D. Tex. 2008), *affirmed*, 358 Fed. Appx. 509 (5th Cir. 2009); *cert. denied*, 131 S. Ct. 96 (2010); *reh'g denied*, No. 09-10655, 2011 WL 55866 (Jan. 10, 2011) (inmate urinated on himself after being denied access to restroom while prisoner

count was completed; verification of count was a reasonable basis for delay and did not show deliberate indifference; inmate did not suffer any physical injury that was not de minimis).

The question of whether Defendants' provision of medical care during this episode amounted to deliberate indifference will be addressed in Count 1. Therefore, Count 2 shall be dismissed with prejudice.

**Count 3 - Due Process - Deprivation of Liberty**

Plaintiff alleges that his placement in isolation at Tamms for an extended period of time has imposed an atypical and significant hardship on him and has violated his Fourteenth Amendment liberty interest. He does not specify what relief he seeks in relation to this portion of his claim, but asks generally for declaratory and injunctive relief and damages in connection with all the claims in his complaint.

Plaintiff falls within the class of plaintiffs in *Westefer v. Snyder*, 725 F. Supp. 2d 735 (S.D. Ill. 2010), *appeal docketed*, No. 10-2957 (7th Cir. Aug. 20, 2010) (inmates transferred to Tamms since Jan. 1, 1998) who were ordered by this Court to be provided with a Transfer Review Hearing within the deadlines set out in the order entered on July 20, 2010. *Westefer,* 725 F. Supp. 2d at 793-95. As such, Plaintiff's procedural due process claims in the instant action were fully addressed in *Westefer*, and are barred by the doctrine of *res judicata*, or claim preclusion. As the Seventh Circuit has explained, "*[r]es judicata* bars suits where there is [1] a final judgment on the merits; [2] an identity of the issues of the lawsuit; and [3] an identity of the parties or their privies." *Maher v. F.D.I.C.*, 441 F.3d 522, 526 (7th Cir. 2006) (quoting *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005)). The final judgment in a class action is likewise *res judicata* to any subsequent action brought by a member of the class. "If the

unnamed members of the class have received constitutionally adequate representation, then the judgment in the class action will resolve their claims, win or lose." *Spano v. The Boeing Co.*, Nos. 09-3001, 09-3118, 2011 WL 183974, at *8 (7th Cir., Jan. 21, 2011) (citing *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 880 (1984)).

If it has not already been completed as ordered in July 2010, Plaintiff will receive his due process hearing pursuant to the *Westefer* injunction. The *Westefer* plaintiff class was denied declaratory relief, which disposes of any such claim Plaintiff may be seeking here. To the extent that Plaintiff may be requesting damages in connection with Count 3 (which is not at all clear), the Defendants would be entitled to qualified immunity. *Westefer*, 725 F. Supp. 2d at 740. Therefore, Count 3 must be dismissed with prejudice on the basis of *res judicata*.

**Count 4 - Americans With Disabilities Act**

Title II of the ADA prohibits public entities from denying qualified individuals with disabilities the opportunity to participate in the services, programs or activities of the public entity because of their disabilities, and prohibits discrimination against disabled individuals by a public entity. 42 U.S.C. § 12132. The Supreme Court has held that Title II of the ADA applies to prisons. *See Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206 (1998). An inmate may sue state officials in their official capacity for prospective injunctive relief under Title II. *Brueggeman ex rel. Brueggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

Furthermore, the Supreme Court in *U.S. v. Georgia*, 546 U.S. 151 (2006), recognized that an inmate may bring a private cause of action for damages under Title II, if the state actor's conduct also violates the Eighth Amendment. The *Georgia* court held, "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates

the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. at 159; *see also Toeller v. Wisconsin Dept. of Corrections*, 461 F.3d 871, 874 (7th Cir. 2006). The *Georgia* court observed:

> [I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [Plaintiff]'s disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted "exclu[sion] from participation in or ... deni[al of] the benefits of" the prison's "services, programs, or activities." (citing 42 U.S.C. § 12132).

*Georgia*, 546 U.S. 151, 158.

To successfully assert a claim under Title II, a plaintiff must establish three elements:

> "(1) that he . . . has a qualifying disability; (2) that he . . . is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his . . . disability."

*Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 937 (N.D. Ind. 2009) (quoting *Frame v. City of Arlington*, 575 F.3d 432, 435 (5th Cir. 2009)); *see also Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). As to the second element, a plaintiff "may establish discrimination by presenting evidence that the defendant intentionally acted on the basis of the disability, the defendant refused to provide a reasonable modification, or the defendant's denial of benefits disproportionately impacts disabled people." *Culvahouse*, 679 F. Supp. 2d at 937 (relying upon *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999)).

**A. Reasonable Modifications to Cell**

Based on his epilepsy, coupled with his mental health conditions, Plaintiff is arguably a qualified disabled person for ADA purposes. 42 U.S.C. § 12102. He has alleged that Defendants Powers, Vinard and Johnson have refused to provide reasonable modifications to his cell – a functional emergency call button, and a sign to alert guards to his seizure condition so

they may appropriately check on him. (It appears that the call button should not even be considered a "modification," but should be present in all cells in the housing unit.) Plaintiff has also requested the removal of the plexiglass cover on his door, which could be determined to be a reasonable modification, depending on evidence yet to be presented. Plaintiff has stated a claim for prospective injunctive relief under Title II of the ADA as to the physical condition of his cell, and may proceed against Defendants Powers, Vinard, and Johnson on that matter.

The above allegations may also provide grounds for an Eighth Amendment claim for damages. Defendants Powers, Vinard, and Johnson refused to provide him with the means to communicate his need for immediate medical care in the event of an oncoming seizure. As a result, Plaintiff claims he was unable to summon help on August 9, 2010, when he had another grand mal seizure in his cell. Defendants Powers, Vinard and Johnson's refusal to provide a working call button or a sign to alert guards to Plaintiff's condition may amount to deliberate indifference to Plaintiff's disability-related medical needs. Thus, Plaintiff may also proceed on his claim for damages under the ADA.

**B. Failure to Provide Necessary Medical Treatment**

Plaintiff also claims that the failure to provide him with recommended medical testing (MRI with dye), failure to send him to a neurologist or other specialist for his seizure condition, and failure to treat his mental illness, violate the ADA. However, the ADA is not a vehicle for a plaintiff to challenge the medical treatment of his underlying disability. *See Grzan v. Charter Hosp.,* 104 F.3d 116, 121-22 (7th Cir. 1997) (plaintiff did not state valid claim for denial of psychiatric treatment "because, absent her handicap, she would not have been eligible for treatment in the first place"); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA]

would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."). Thus, Plaintiff is limited to pursuing his complaints about his medical care under the deliberate indifference claim (Count 1) above, and this portion of Plaintiff's complaint shall be dismissed.

### C. Placement in Segregation

Finally, Plaintiff asserts that his placement in an "extremely segregated and isolated environment" has increased the severity of his mental illness, thereby violating the ADA. However, it does not appear that Plaintiff was transferred to Tamms because of his disability. Any cell in Tamms is segregated and isolated. *See Westefer*, 725 F. Supp. 2d at 769. Plaintiff avers that, as a result of his deteriorating mental health condition, he was moved to the "elevated security wing," which may or may not be more isolated and segregated than other wings at Tamms. He also states he was put on suicide watch, which would be an appropriate response to his reports of having urges to harm himself, and could explain the move to the "elevated security wing."

It does not appear that there would be any way for Defendants to move Plaintiff to a non-segregated, non-isolated placement without transferring him out of Tamms. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). The Court is not aware of any authority that would create an exception to this rule for an inmate with a disability. Therefore, Plaintiff has not stated a claim under the ADA to challenge his prison

placement, and the Court is satisfied that this aspect of Plaintiff's complaint will be sufficiently addressed pursuant to *Westefer*, as noted in Count 3 above. This portion of Plaintiff's complaint shall be dismissed.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 2, COUNT 3, COUNT 4-B** and **COUNT 4-C** fail to state a claim upon which relief may be granted, and thus are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **JOHNSON, POWERS, VINARD, NURSE RONDA** and **WILLIAMS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** 3/28/2011         s/ MICHAEL J. REAGAN
                                            _____
                                            **U.S. District Judge**